Good morning, Your Honors. My name is Lee Lewis. I represent the appellant, Glenda Stetner. I'd like to respectfully request three minutes for rebuttal. Your Honors, this morning we are asking the Court to reverse the District Court's orders on our party's cross-motion for summary judgment below, based on the arguments raised in our briefing. Now, unless the Court is inclined to go in a different direction, I'd like to focus the conversation today on the second duty that an employer owes an employee upon being notified of potential sexual harassment in the workplace by a co-worker. Is that because you agree that the employer in this case complied with all required at the first step? No, Your Honor. We agree that the investigation was prompted. We have no issue with the actual investigation process. We do take issue with their actions regarding Mr. Laughlin, and we detail that in our briefing, that he was placed on a version of administrative leave that we believe was inadequate. Well, why was it inadequate? It was designed to keep him from coming in contact with Ms. Stetner, and it appeared to be successful because there was no contact. It was, but through no action of the City. But it was due to the action of the City, wasn't it, because they prohibited him from coming to the place of employment? I know. He was allowed to continue to work as long as he called in in the morning. To make sure she wasn't there. Right, but there was nothing to prevent Ms. Stetner from coming into the office to stop by her desk or say hello. There was no guarantee that the two would not be able to be in contact with one another. Did she protest this to anyone? Other than stating to Mr. Worley that she was taking time off to take medical leave. Did she say to Mr. Worley, I can't come in as long as there's any chance that this guy, while this guy's employed, because there's a chance I'm going to see him again? No, she did not. Okay. So where's the hostile work environment here? The hostile work environment. Didn't the City owe an obligation to Mr. Laughlin to make sure that the allegations that she was making had some basis? Of course, yes. And we're not looking to – I represent employers as well. I understand the balancing act that employers walk. Sometimes they feel like they're caught between a sill and charybdis of trying to assuage the complainer and protect the rights of the accused. And that's why it's entirely appropriate to have a discrete investigation at Ab initio when you're trying to figure out what's going on. But once it's understood and known that the harassment has occurred, there has to be some step taken, an affirmative act taken by the employer, that is reasonably calculated to not only end the harassment but to deter future harassers. And that's what we argue did not occur here. Okay. So what should the City have done and when should it have done it? So the City, based off of the City's statements that they called the police, the police investigation began the day after Mr. Laughlin confessed the actions to the City Administrator. What date did he confess? That was August 19th, 2014. Okay. Investigation began August 20th. So that means if we take the City's statement as true that they called the police, that means at that point that is the day that their duty to take some type of remedial action occurred, was established. They didn't do a thing. Now, when you say they didn't, you say that in the brief and it really bothers me because they took immediate action. And, you know, you rely on Swinson and Fuller, and those are completely different cases where they allowed these people to be in the same workplace. In fact, in some cases arguably compelled that. The City didn't do anything like that in this case. They took immediate action. You said they don't do any? Really, that's not right. Well, I apologize for not expressing that correctly. My intention is that is that there's a two-step duty that the employer has. The first is the immediate steps while the employer ascertains what happened. Right, and you wanted to go to the second step, so my question was are you conceding that they did everything in the first step? And you said no, you're not conceding that. And Judge Bybee just asked what else could they have done, and I'm at a loss to figure out what else they could have done. Sorry, I interpreted Judge Bybee's question. I mean, what else could they have done once they were aware of the sexual harassment? If we want to go back to the initials. You mean once they confirmed it? Correct, once they confirmed it. So you're saying that they had a duty to terminate him as of about August 19th? Not to terminate him, but to take some form of remedial action. And that isn't by calling police and making sure that he's on administrative leave? And administrative leave, of course, is just a precursor to additional action, which he moots when he resigns. Correct, but as of the date that the city was aware of the sexual harassment, August 19th, 2014, at that point the city had an obligation to take some action reasonably calculated not only to stop Mr. Laughlin, but to deter future harassers. Okay, and so what should they have done? The law provides any number of options. It doesn't require a formal piece of discipline. It can be an admonishment. It can be direction to counseling. But the calling the police, the city is on the record saying they kept this entire investigation confidential. At no point did they inform their staff, did they use Mr. Laughlin's actions as a cautionary tale to let potential harassers know that we're not going to tolerate this type of situation? You mean they had an obligation to start sensitivity training or some other kind of sexual harassment training? Something, something. And if the city had done any... And if they had done that, that would have precluded you from bringing a suit for hostile work environment? Right, I think we'd be having a very different conversation right now. And it's what we really are arguing is that the city did, and to be specific to your... What cases would suggest that a failure to immediately call for sexual harassment training violates the law? Is there anything in the statute that says that? No, it falls to that broad number of the word reasonable. What is a reasonable step? And you want us to create the law here by saying if you don't call for sexual harassment training immediately, that you have violated Title VII? No, Your Honor, we're not asking for any specific determination of a specific act that's required. And I don't think that would be fair to employers. What we're saying is that the city here, once they knew about Mr. Laughlin's behavior, did nothing. If they would have done something... You know, calling the police and then allowing the police to get involved is a pretty serious step. This is one that the police don't get to hide. I mean, if their investigation proves something, and since he's confessed, the city has every reason to believe that it will. And he is ultimately charged and convicted. All of that is public. That's not deterrence? Not when it's kept confidential from the staff. It's never reported to the staff. The city called the police. Mr. Laughlin wasn't charged until November of 2014 after he left his employment. So from a staff standpoint, Mr. Laughlin and Ms. Stentner were at work one day, were not at work another day. Mr. Laughlin came back to work. Ms. Stentner never returned, and there was never an explanation. It's not a terribly big town, and you do have a number of people who went up the chain of command there that have to be advised of what's going on. But if the city knew and called the police on October 19th, so they were reasonably assured that Mr. Laughlin had taken some bad act against Ms. Stentner. They allowed him to continue to work. Well, just a minute. I guess I don't understand the facts. It seems to me that she goes in, she talks to her supervisor on August 11th. That's correct. And immediately Worley goes on and relays this to the city administrator. They immediately start the investigation, and it seems to me you're okay to there. That's correct. On August 14th, they put Laughlin on administrative leave. So that says you're not to come to work anymore. If you come, you must call first to make sure that the plaintiff isn't here, and you can only come to complete projects. That's it. Then they start their investigation. On August 15th, your client went on leave for a 30-day medical leave. That's correct, Your Honor. On August 19th, they interviewed Laughlin, and immediately upon that interview, they call the police, right? That's correct, Your Honor, yes. And they immediately tell your client to stay away from Laughlin, and then on August 31st, Laughlin breaks his leg and he doesn't come back to work. The record does indicate that he does come into work occasionally during that time. Well, I thought from August 31st on, he'd broken his leg and he never comes back to work. If he did, he came rare. I mean, maybe once. I don't know. My own notes say he never comes back to work. And then on September 22nd, he submits his resignation. Those are the facts. Your client hasn't been there since the 14th of August. That's correct, Your Honor. But there's a hostile work environment even though they know that she's gone because they failed to talk to other people in the office about sexual harassment involving two people who are no longer on site, one because she's taken leave and the other is because he's been placed on administrative leave? Correct, because that's what the law requires. The law requires the- I asked you this question before and you couldn't give me an answer. I asked you, where is that in the statute? Or give me a case. So Swenson mentions it. It says that there's a two-part duty. The second is that- Okay, but this is at a very high level of generality, very, very high level of generality. And you're asking us to say they had to do something. We're not sure what it was. It could have been sensitivity training for other people, for other things. But where's the hostile work environment? She's not in the environment. She's out voluntarily and he's being addressed in a very systematic way, in a very deliberate way. In a way that allowed a known sexual harasser to continue to work? Mr. Lewis, when you say he continued to work, it's in the context of having to call in before he comes and picks up or drops off work, right? That's it. That's correct, Your Honor. And would you agree that with regard to the second step, that the details of that would have to be reasonable based on the circumstances of that case? Absolutely right, Your Honor. These are fact-intensive issues. How is this not reasonable? I mean, you've told the guy he can't come to work except to drop off and pick up things, and only then if he calls first. There's a police report that's made. He's being prosecuted or investigated and then prosecuted, and your client's not there. What reasonable steps could be taken to make sure that this doesn't happen again? Sure. It could have been made a witness. The situation could have been made known to the staff. Well, your client didn't want it made known to anybody, right? That's correct. But what my client wants and what the law requires are two different inquiries. I'm just having a very difficult time figuring out where the hostile work environment is when your client is out. This was a horrible thing that happened to her. And, you know, Mr. Laughlin was addressed by the law. But where's the hostile work environment? Give me the dates on which there was a hostile work environment that your client was in. Sure. The dates were from August 19th when the city— And she's not there. How can it be a hostile work environment if she's not in the environment? Because the environment also inures to the employees as well. If there's a hostile work— Are you bringing this on behalf of the other employees? I am not, Your Honor. This is not a class action. Okay. But tell me what damages would she get for experiencing a hostile work environment from home when she's not at work? Damages she would get were the pain and suffering from being subjected to this hostile work environment. Subjected to what, counsel? On the 19th, she's not in the office. Because Mr. Worley called her and said, we're going to bring Mr. Laughlin back. We're keeping on her short leash. At that point, she has no faith in the city's ability to meet her needs or address her situation or take it seriously. So there's a hostile work environment existing until the city takes some type of affirmative act. You know, I want to make sure we're not dealing in hyperbole here. When you say short leash, you're going back to what I mentioned earlier, his having to call in to make sure she's not there. During our discovery process, we deposed Mr. Worley. And Ms. Stenner had reported that that was the essence of the phone call, is that Mr. Worley had told her that we were going to bring Mr. Laughlin back, keep him on a short leash. And then at that point, he said he couldn't recall specifically saying that, but it would be something he would have said. Let me ask you a couple of questions. If I look at Swenson, Swenson says the reasonableness of the remedy will depend on its ability to stop harassment by the person engaged in the harassment. The purpose is remedial. It's to avoid and prevent discrimination. It's not punitive. So if that's it, here's what happened. On August 11, she says what she says. On August 14, he's thrown out, so there's no question he's stopped. He can't come in except to get work, and he has to call early. And from then after, your client has gone, not even there. And Laughlin breaks his leg on August 31, and he never comes back to work. I'm trying to figure out why that is not a reasonableness depending on ability to stop the harassment engaged by the person engaged in it. Because finding of sexual harassment, Swenson requires some disciplinary act against the harassing employee. Well, the disciplinary act never came because he quit before they could. Mr. Sneed's declaration says that if he would not have resigned, he would have been fired as a result of the initial investigation. So at that point — Well, that's what I just said. So at that point, Mr. Sneed was aware and had the results of the investigation, knew that he had harassed her, and took absolutely no action. Well, let's go on further. There's one part of your whole part here that has bothered me, and I don't know why you threw it in. Why are there anything in here about inappropriate statements made by Worley? Because a year — What does that have to do with this? It has to do with the fact that the city was on notice of prior inappropriate statements made by Ms. Stettner's supervisor, and they did nothing to investigate it. No. So it shows that there's been a pattern or practice of not following up and reacting appropriately to — That's correct. — what they did in the past? That's correct, Your Honor. The failure to — Is that the only reason it's put in there? That's correct, Your Honor, yes. All right. I wondered, because you didn't file any complaint. You didn't do anything about it. So I was wondering how it's supposed to change my analysis. I understand. Thank you. Counsel, you're well over. I will allow you time for rebuttal. Thank you, Your Honor. Mr. Baker? May it please the Court, Counsel, my name is James Baker, and I'm representing the city of Quincy in this action. In Burlington Industries v. Ellerth, the Supreme Court stated that an employer's liability for sexual harassment runs only from the time it knew or should have known about the conduct and failed to stop it. This court in Swenson followed Ellerth and stated, Notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is reasonably calculated to end the harassment. The city met its duty here. As the district court ruled, after the sexual harassment was reported, the city took prompt corrective action that was reasonably calculated to end the harassment. The district court then stated, Plaintiff fails to raise a genuine issue of material fact regarding the adequacy of the city's response following notice of Laughlin's actions. I'm just going to talk for two minutes about the facts of the case with the various dates. But Judge Smith was certainly in command of the facts, giving all the dates of when the broken leg was. So I will forego going over those facts because it appears that it's well known to the court. It seems to me that your opponent is really focusing on the phrase in Swenson that says one also reviews whether the remedy persuades other potential harassers to refrain from such conduct. What did the city do to do that? Well, they put Mr. Laughlin on administrative leave, and then they report him to the police department. Why wasn't he fired at that point? Why wasn't he fired at that point? The city doesn't have to wait for a criminal conviction in order to be able to terminate somebody. They can make that own decision. It's a lower standard of proof than it is for a criminal case. So why, after August 19th, why didn't they just up and fire him? You know, I don't know exactly other than the investigation was being done by the former police chief of City of Moses Lake, and he had not completed his report yet. Did he ever – does the record indicate that Mr. Mitchell ever completed his report?  I think the record says when it was completed. That's not facts in my brain right now, but it wasn't a – Is there a date in the record where the investigation was described as complete? It doesn't come to mind right now, Your Honor. Well, frankly, it seems to me that the investigation was not complete by the time Laughlin broke his leg and never came back to work. That's on August 31st. There's no – there's nothing in the record to suggest it was complete by that day because they were still continuing to do interviews, and the investigator interviewed – even interviewed the plaintiff a third time after Laughlin said the advances were consensual. So she had three interviews. So I know it wasn't complete by the time he broke his leg and quit coming. Yes, Your Honor, I just don't know the exact date it was actually signed, sealed, and delivered, and I don't know. And he did take a job – he did submit his resignation on the 22nd of September, correct? Correct. Was the investigation complete then? I cannot answer that question, Your Honor. I'm sorry, I don't – Was it complete by the time he took his new job as a plans examiner in Grant County? That's in November. Well, I don't – I can't cite you the line in verse, but I'm sure it would have been by that time. So Mr. Laughlin was then charged with stalking, fourth-degree assault, sexual motivation and – with sexual motivation and indecent exposure. That's in November, isn't it? Yeah, it was after he was resigned. But it was reported promptly to the police. So you don't – so you don't know – if Mitchell had come back with a full report and said, you know, Here's what – here's what Ms. Stettner says. Laughlin doesn't really – doesn't really deny it. I've talked to other people around it who observed some things or didn't observe things. Here are my conclusions. Would Mr. – if Mr. Laughlin wished to dispute this or wished to resist the termination, what kind of due process would he have been entitled to under the rules? What would the city of Quincy had to do in order to terminate him? I – city of Quincy's personnel policy, under that policy, depends if it's a union employee or a non-union employee. And as a non-union employee, he was considered an employee at will. They could fire him with or without cause at any time. And he was non-union? But I'm thinking that he was a union employee because Ms. Stettner was a – Ms. Stettner was a union employee. But that hasn't come up. It never came up in this case. Let's suppose that he denied the charges, but Mitchell came back with a report and says, I've interviewed both of them. As far as I'm concerned, Stettner's completely credible and he's not. So I think he did all of these things. At that point, if Laughlin is resisting termination, is he entitled to a hearing before the city can terminate him, some kind of a name-clearing hearing? It would be what was – if he was union, it would be what was provided under the union contract. But you don't know whether he's union? No, I don't, Your Honor. It never seemed to be an issue here. Ms. Stettner's primary argument seems to be based on two opinions from the court – this court, Ellison v. Brady and Fuller v. City of Oakland, which Judge Antoon has already alluded to and said those facts are totally different. And also Perry v. Costco Wholesale, which is a Washington Court of Appeals case, and the facts are totally different in this case. And we fully discussed the Ellison case at page 32 to 33 of our brief. The Fuller opinion at 33 and 34 of our brief. And the Perry v. Costco case at 34 to 36 of our brief. And they are worlds apart from what we have here. This court recently affirmed summary judgment in a sexual harassment hostile work environment claim in Justice v. Rockwell Collins, Inc., 720-Fed APPX-365. Well, that's an unpublished opinion. Yes. It doesn't really provide us with much help. Okay. Well, it was the same type of thing that after the offensive behavior was reported and addressed, the offensive behavior ceased immediately and never happened again. So I'll leave it at that. But that's like this case where once the sexual harassment was reported, it never occurred again. She was never sexually harassed again. She was never in a hostile work environment again. Here the city did not know about the harassment while it was occurring. Upon being informed, the city took prompt and appropriate corrective action. As in Ellison, the reasonableness of an employer's remedy will depend on its ability to stop harassment by the person engaged in the harassment. The district court stated that, set forth that the defendant had an obligation to take prompt action to end the harassment, which it did. The city promptly arranged for an investigation by an outside agency, reported Laughlin's action to the police for possible criminal prosecution, placed Laughlin on administrative leave, and advised him to stay away from plaintiff. All of those actions demonstrated the defendant's commitment to taking allegations of sexual harassment seriously, adequately ending Laughlin's harassment and providing deterrence to others from engaging in similar behavior. That was the district court. District court further said plaintiff does not allege that she was ever sexually harassed by Laughlin after the day that she reported the allegations. The city promptly launched an investigation after learning of the harassment, and as said in Swenson, the most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified. In Chapman v. Progress Rail Service, well, this is a district court case, and it's a, I guess it's a, well, I know, at 2015 Westlaw 734-5761, the district court cited Francom v. Costco Wholesale Company, which is a Washington Court of Appeals case, and saying that the fact that the conduct never occurred again is proof that the response was reasonable and adequate as a matter of law. In Burrell v. Star Nursery, 1998 opinion of this court, the court said that a plaintiff alleging a co-worker harassment was proof that the employer either provided no reasonable avenue for complaint or knew of the harassment and did nothing to stop it, and that's not the case here. Also, the district court here dismissed both the federal claim and the WLAD claim, pointing out that the analysis is similar in both cases, and then specifically in the Perry v. Costco case by the Washington Supreme Court on the Washington Law Against Discrimination, where the court said, quote, the fact that the harassment never happens again is proof that the employer's response was reasonable and adequate as a matter of law. That's under Washington case law. So we ask that this court affirm the district court's entry of summary judgment and find that the city took prompt corrective action that was reasonably calculated and did in the harassment. Okay. Thank you, Mr. Baker. Mr. Lewis, I'll give you a minute. Thank you, Your Honor. Just very quickly, I wanted to clarify the language that counsel mentioned in the Perry case. First, Perry is a Washington Court of Appeals case, not a Supreme Court case, and the language is that, I'll quote, the fact that the harassment never happens again is proof that the employer's response was reasonable and adequate as a matter of law. I think it's important to consider that statement in the context with which it was originally derived. That issue of law comes from a previous Division III case in Washington Court of Appeals, Frankholm v. Costco, in which it was in response to the employee's complaint that the sufficiency of the otherwise adequate employer response was not sufficient to the particular employee. And what the Frankholm court said that the subjective belief of the employee is the adequacy of the remedy is of no moment. If the harassment stopped, then the appropriate and reasonable actions taken by the employer were reasonable as a matter of law. So I ask the court not expand that statement to be out of context so that it would create a situation where an employer could simply avoid negligence under a co-worker sexual harassment liability context by simply even firing the complaining employee because that would stop the harassment. That would be an absurd result. So I'd ask the court to limit that statement to the context in which it was meant to be considered. Unless there's any... Judge, Judge Bybee asked opposing counsel whether the record contained any description of the due process rights that Mr. Loeffler had. Can you tell us? Yes. To my knowledge, the record does not contain any of that. It was not an issue that we argued about. And I don't believe... I won't speculate. I'm not sure whether he was a union employer or not. Okay. And do you have a date for when the Mitchell report was completed? I do not. That was never provided to us. Okay. All right. Thank you, Your Honors. Thank you, Mr. Lewis. We thank both counsel for the argument. Stetner is submitted and the court has completed its calendar. We are in recess. All rise.
judges: Bybee, N.R. Smith, Antoon